1
2
3
4
5
6
7       **UNITED STATES DISTRICT COURT**
8       **DISTRICT OF NEVADA**
9
10   UNITED STATES OF AMERICA,
11        Plaintiff,                              Case No. 3:73-cv-00183-LDG
                                                  In Equity A-183
12   v.
                                                  **ORDER**
13   ALPINE LAND AND RESERVOIR CO.,
     *et al.*,
14
         Defendants.
15   _____
16   In Re: Tribe Petitions
     _____
17

18        An identical order has been filed in both the Orr Ditch and Alpine Petition Cases.

19

20        Presently before the court are two sets of motions.  The first set seeks dismissal of

21   the Tribe's petitions on various grounds and to various degrees.  The moving parties argue,

22   *inter alia*, that dismissal is warranted because the Pyramid Lake Paiute Tribe failed to serve

23   their petitions on each joined respondent, failed to file a *lis pendens* on each parcel of land

24   identified in the petitions, and because the lands, along with their appurtenant water rights,

25   have been conveyed to unserved persons since the filing of the petitions.  The following

26

table sets forth these motions, their docket number in the Orr Ditch and Alpine cases, and

the moving party.

| Orr Ditch Docket No. | Alpine Docket No. | Filing Party | Motion |
|---|---|---|---|
| | 2043 | Alpine Respondents represented by Woodburn and Wedge | Motion to Dismiss Pursuant To FRCP 12(b)(5 and FRCP 4(m) |
| 803 | | Orr Ditch Respondents represented by Woodburn and Wedge | Motion to Dismiss Pursuant to FRCP 12(b)(5) and FRCP 4(m) |
| 806 | 2050 | Orr Ditch and Alpine Respondents represented by Schroeder Law Offices | Respondents' Motion to Dismiss Pursuant to FRCP 12(b)(5) and FRCP 4(m) |
| 807 | 2045 | Truckee Carson Irrigation District | Application for Order to Show Cause Why The Petitions Should Not Be Dismissed; Motion to Dismiss |
| 804 | 2044 | City of Fallon | Joinder in TCID's Application for Order to Show Cause; Motion to Dismiss |

The Tribe filed a consolidated response to these motions. (#823 in Orr Ditch; #2111 in

Alpine.)  The moving parties have filed replies.

The second set of motions seek a determination that, in Joint Testimony submitted

in support of the AB 380 legislation, the Tribe agreed to dismiss its petitions upon the

retirement of 6,500 acres of water rights.

| Orr Ditch Docket No. | Alpine Docket No. | Filing Party | Motion |
|---|---|---|---|
| 798 | 2038 | Truckee Carson Irrigation District | Motion to Enforce Settlement Agreement |
| 802 | 2042 | City of Fallon | Motion to Enforce Settlement Agreement |

The Tribe filed a consolidated response to these motions.  (#816 in Orr Ditch; #2106 in

Alpine.)  The moving parties have filed replies.

2

Service of Process

In its petitions, the Tribe generally sought a determination that various water rights within the Newlands Reclamation Project do not exist because those rights were never perfected, or had been forfeited or abandoned.[1]  The petitions, themselves, did not identify the water rights, but instead referenced attached exhibits that described the lands to which the water rights were appurtenant.  The exhibits did not identify or name the owners of those lands.  Following a status conference attended by various entities with interests in water rights in the Newlands Reclamation Project, the Alpine Court ordered the Tribe to join, as parties, each owner of property as to which the Tribe alleged that the appurtenant water right was unperfected, forfeited, or abandoned, and to serve process upon all such persons.  In connection with this Order, the Alpine Court ordered the Tribe to furnish a list to the Court identifying the names and addresses of the persons to be joined.  The Tribe filed a list of approximately 1200 names.  The Alpine Court then ordered the Tribe to serve the joined parties pursuant to Rule 4(c)(2)(C)(ii).[2]  While Rule 4(c)(2)(C)(ii) provides for service by mail, it also requires that if acknowledgment is not received within 20 days of the mailing, "service of such summons shall be made under subparagraph (A) or (B) of this paragraph in the manner prescribed by subdivision (d)(1) or (d)(3).

Similar orders were entered by the Orr Ditch Court.  In response, the Tribe identified approximately 500 persons who should be joined in the Tribe's petition in Orr Ditch.

After the period of time established by the Courts for service of process, the Tribe filed 237 Notice and Acknowledgment Forms from respondents joined to its Alpine petition,

---

[1]     The Tribe's Orr Ditch petition challenges water rights within the Truckee division of the Newlands Reclamation Project, which rights were adjudicated by the Orr Ditch Decree, whereas its Alpine petition challenges water rights within the Carson division of the Project, which rights were adjudicated by the Alpine Decree.

[2]     The Court's Order referenced Rule 4(c)(2)(C)(ii) as effective at the time of the order.

1  and 44 Notice and Acknowledgment Forms from respondents joined to its Orr Ditch

2  petition.  As to joined respondents who did *not* return an acknowledgment, the Tribe did not

3  offer any proof of service by any means.

4       Previously, this court found valid the Tribe's service of process on those persons

5  who returned Acknowledgment Forms.  The court now finds that the Tribe has not served

6  those joined respondents who did not return Acknowledgment Forms.  Under the prior Rule

7  4(c)(2)(C)(ii), pursuant to which the Tribe was required to complete service, "[w]hen the

8  acknowledgment is timely returned, service is complete.  When it is not returned, the rule

9  provides that other methods of service *must be employed*."  *Worrell v. B.F. Goodrich Co.*,

10 845 F.2d 840, 841 (9th Cir. 1988) (emphasis added).  As further noted in *Worrell*, "even

11 though the defendant receives actual notice by mail, *there is no valid service* unless the

12 acknowledgment is timely returned."  *Id.,* (emphasis added).  Whether or not each of the

13 named respondents received the Tribe's service by mail, such receipt was not a valid

14 service if the respondent did not return the acknowledgment.  Further, as the Tribe did not

15 attempt service by any other appropriate means upon those named respondents who did

16 not return the acknowledgments, they have not been served.

17      Accordingly, the issue presented by the motions now before this court is the impact

18 of the Tribe's failure to serve more than 1300 respondents that it joined to its two petitions.

19 Certain of the moving parties suggest that the appropriate remedy is that the petitions be

20 dismissed as to all respondents, whether served or not.  They argue that the failure to

21 serve every respondent that the Tribe identified constitutes a violation of this Court's order

22 to join and serve all identified respondents.  The TCID (joined by Fallon) and those

23 respondents represented by Schroeder Law Offices more modestly suggest that the

24 petitions should be dismissed, without prejudice, as to each of the unserved respondents.

25      The Tribe argues, in response, that (1) this Court previously decided these issues in

26 its favor, (2) the Federal Rules of Civil Procedure do not govern proceedings before the

4

federal water master, and (3) that the owners of water rights determined by the Alpine Decree have been certified as a class, and thus service is not required.  Each of these arguments fails.

First, this court has not decided the issues whether the Tribe adequately served those respondents who did not return acknowledgments, or the impact upon this litigation of a failure to serve those respondents.  Rather, the court has indicated only that the Tribe's certification of service was an event triggering a schedule to file motions.  Though several parties have previously filed motions to dismiss arising from the failure to serve each joined respondent, the court has not ruled on those motions on the merits.  Second, the issue presented by the present motions is not whether the Tribe may proceed with a challenge to certain water rights before the federal water master, but whether it may proceed with its petition before this court.  While the Tribe is required to exhaust its remedies before the federal water master before proceeding in this court, that requirement does not excuse the Tribe from complying with the Federal Rules of Civil Procedure in its litigation of its petitions before this court.  The Tribe had an obligation, both pursuant to the Federal Rules of Civil Procedure and the orders of this court, to serve each named respondent.  The Tribe has complied with that requirement only as to those respondents who returned acknowledgment forms.  Third, the prior certification of a class of water right owners in the underlying Alpine litigation leading to the Alpine decree does not constitute a certification of that class for purposes of the present petitions.  Rather, this court's prior orders requiring the identification of each owner of land whose appurtenant water rights were being challenged, and the joinder and service of each such owner as a respondent, reflected the court's determination that each owner of a water right must be individually served, and each owner must be provided an opportunity to individually defend the relevant water rights.

1    Rule 12(b)(5) provides that a petition may be challenged for insufficiency of service.

2    Rule 4(m) requires that a petition be dismissed, without prejudice, as to those respondents

3    who are not timely served.  Thus, at a minimum, the petitions must be dismissed without

4    prejudice as to each of the unserved respondents.

5        The court would note that, in connection with the dismissal of these unserved

6    respondents, the Tribe's petitions are dismissed, without prejudice, to the extent that they

7    challenge the water rights appurtenant to the lands owned by those unserved respondents.

8    The court required the Tribe to identify and join each of these respondents so that each

9    owner of a challenged water right could defend the water rights appurtenant to their lands.

10   By failing to serve these respondents, the Tribe has precluded those respondents from

11   defending their water rights.  As such, the court will preclude the Tribe from challenging

12   those water rights appurtenant to the lands owned by unserved respondents.

13       The court disagrees, however, that the failure to serve each named respondent

14   requires the dismissal of the complaint as to the served respondents.  As noted, the court

15   required that the Tribe serve all named respondents to ensure that each owner of a water

16   right receive notice, by valid service, that the Tribe was challenging the water right

17   appurtenant to land owned by that person.  This court has not found, and does not find,

18   that each named respondent is a necessary party to decide whether the water rights of

19   other named respondents were never perfected, or were abandoned or forfeited.

20   Accordingly, the failure to serve every named respondent does not require the dismissal of

21   the petitions in their entirety.  Rather, the failure to serve a respondent requires the

22   dismissal, without prejudice, of the petition as relevant to that unserved respondent.

23

24   Lis Pendens

25       Certain of the respondents, and the TCID, have also argued that the Tribe's

26   petitions must be dismissed relative to those lands which, subsequent to the service of

6

1   process in 1993, were purchased from a served respondent, because the Tribe failed to file

2   a *lis pendens* against the underlying property notifying potential purchasers of its challenge

3   to the appurtenant water rights.  The Tribe did not respond to this argument, and the failure

4   to oppose constitutes a consent to the granting of motion on this basis.  *See,* LR 7-2(d).

5          Nevertheless, the court would note that the argument presents an interesting issue.

6   The Tribe brought its petition to challenge the existence of certain water rights.  The court

7   required the Tribe to serve the owners of those water rights, so that those owners would be

8   notified of the challenge, and would have an opportunity to defend those water rights.  The

9   passage of time, and particularly the conveyance of property and its appurtenant water

10  right, may have acted to extinguish the effectiveness of the notification provided by service

11  of process.  Further, this delay in prosecution cannot be attributed to the purchasers of

12  property, who are entirely innocent of the reasons for the delay.  Rather, this matter was

13  initially stayed because the Tribe failed to first exhaust its remedies before the federal

14  water master.  While the court believed that the stay would be fairly brief, the stay has now

15  remained in place for more than a decade.  The court would note that, several years after

16  the stay was imposed, certain respondents moved to dismiss for lack of prosecution.  The

17  Tribe opposed the motion, arguing that it had not exhausted its remedies before the federal

18  water master so that key legal issues could first be resolved in other, pending litigation.

19  The court accepted the Tribe's argument and denied the motions without prejudice.  When

20  the parties again moved to dismiss this matter for lack of prosecution, the Tribe opposed,

21  arguing that the stay should continue to allow the fullest opportunity for an alternative

22  resolution of the Tribe's petitions through the A.B. 380 program.  The court again accepted

23  the Tribe's argument, and denied the motion without prejudice.  Nevertheless, because of

24  the lengthy delay, upon the completion of the A.B. 380 program, this court has resumed

25  management of this case, due in no small part to concerns raised by the respondents that

26  the ongoing delay has and will continue to prejudice owners of water rights.

1    The Tribe's failure to oppose this issue leaves the court without any evidence or

2    argument that persons who purchased land with appurtenant water rights from served

3    respondents have adequate notice, or any notice, of the present petitions.  Rather, it would

4    appear to the court that, as to such purchasers, they are unserved respondents.

5    Accordingly, the court will dismiss the Tribe's petitions, without prejudice, to the extent it

6    challenges water rights appurtenant to lands that are now owned by persons who were not

7    served.

8

9    Res Judicata

10   The TCID argues that the Tribe is collaterally estopped, pursuant to the doctrine of

11   *res judicata*, from challenging those water rights whose transfer was approved in Case No.

12   D-184-HDM.  The TCID specifically references those water rights whose transfer the Tribe

13   challenged for reasons *other* than lack of perfection, abandonment or forfeiture.  As noted

14   by the Tribe, the validity of the transfers was decided without prejudice to the Tribe

15   subsequently bringing a challenge to those rights under Nevada water law.

16

17   Confusion

18   Finally, the TCID suggests that the Court should require the Tribe to file a new

19   petition that accurately reflects the current circumstances.[3]  The TCID requests that the

20   Tribe file a petition that "restates" the petition to reflect the current circumstances of the

21   water rights challenged in its petitions.  The court will deny the request at this time, but

22   without prejudice, as it may become appropriate that the Tribe amend its petition to clarify

23   the water rights being challenged, the basis for those challenges, and to ensure that its

24   _____

25         [3]    The Tribe suggests that TCID has asked that its petition be dismissed
      because of the changed circumstances.  A close reading indicates only that the TCID
26    requests that the Tribe show that it has a valid claim as to each water right that is
      challenged by its petitions.

8

1    challenges go forward only as to those water right owners whom the Tribe served in 1993

2    and 1994.

3

4    Motions to Enforce Settlement

5        The moving parties argue that the Tribe agreed, as memorialized in Joint Testimony

6    presented to the Nevada legislature, to dismiss any remaining petition or protest

7    challenging water rights when a total of 6500 acres of water rights were retired,

8    abandoned, or forfeited through a combination of the A.B. 380 program, and as a result of

9    the Tribe's protests and petitions.  The Tribe counters that the Court must deny the motions

10   because (a) the Tribe has not waived its sovereign immunity and thus this court lacks

11   jurisdiction, (b) the Tribe did not enter into an enforceable settlement agreement, and (c)

12   any obligation to dismiss the remaining petitions was triggered only if 6,500 acres of water

13   rights were abandoned or forfeited through the A.B. 380 program, which event cannot

14   occur because the A.B. 380 program is now expired and did not reach its goal of retiring

15   6,500 acres of water rights.

16       At this time, the court will deny the motions as premature.  As the moving parties

17   concede, even if the Tribe is bound to the settlement agreement, and even if the Tribe's

18   obligation to dismiss is triggered when 6,500 acres of water rights are retired, the Tribe

19   currently does not have an obligation to dismiss its outstanding petitions because that

20   condition has have not yet been met.  As such, even accepting the moving parties'

21   allegations and arguments as true and accurate, the Tribe has not yet violated its obligation

22   to dismiss the remaining petitions.  Since the Tribe has not violated any condition of the

23   alleged settlement agreement, any order enforcing that settlement agreement would be

24   premature.

25       The court would note, however, that in reviewing the moving papers, it disagrees

26   with the Tribe's argument that it has not waived its sovereign immunity.  By filing the

9

1   petitions now before the court, the Tribe waived its sovereign immunity relative to its

2   continued prosecution of these petitions.  If the Tribe entered into a settlement agreement

3   in which it agreed to dismiss these petitions, this Court has jurisdiction to determine

4   whether the Tribe is bound by its agreement to dismiss these petitions.

5        The court would also note that it disagrees with the Tribe's argument that it did not

6   enter into an enforceable settlement agreement.  The Tribe signed a document entitled

7   "Joint Testimony of Truckee-Carson Irrigation District, Pyramid Lake Paiute Tribe of

8   Indians, City of Fallon, Churchill County and Sierra Pacific Power Company Before Senate

9   Committee on Natural Resources Concerning Assembly Bill 380 ("Joint Testimony").

10  According to that statement, "[i]t is intended to provide background information to explain

11  the purposes of A.B. 380 <u>and to acknowledge the commitments and agreements</u> which

12  allow these entities to support, endorse and recommend enactment of A.B. 380" (emphasis

13  added).  Further, the Joint Testimony expressly recites that:

14      When the total of (a) water rights irrevocably committed to sale, retirement
        and abandonment and (b) water rights finally determined to be abandoned or
15      forfeited through the Tribe's protests or petition cases equals 6500 acres of
        water rights, the Tribe has agreed that . . . its remaining petition cases will be
16      dismissed.

17  Thus, the court would note that the Tribe entered into an agreement to settle the petitions

18  now before the court.

19       Finally, the court disagrees with the Tribe that its agreement to dismiss the petitions

20  was triggered, if at all, only if the A.B. 380 water rights acquisition program retired 6,500

21  acres of water rights.  Rather, reading the Joint Testimony and the A.B. 380 legislation as a

22  whole, the Tribe expressly agreed to dismiss its remaining, outstanding petitions and

23  protests when 6,500 acres of water rights were retired and abandoned through the

24

25

26

10

1   combination of the water rights acquisition program[4] and final determinations in the Tribe's

2   petitions and protests outside of that acquisition program.   While the acquisition and

3   retirement of water rights through the A.B. 380 program could only occur during the

4   duration of that program, the retirement of water rights as a result of the Tribe's petitions

5   continues beyond the end of the A.B. 380 program.  Further, the language of the Joint

6   Statement does not state that the Tribe's obligation is triggered only upon the A.B. 380

7   program reaching its limit of acquiring and retiring 6,500 acres of water rights.  Rather, the

8   language clearly indicates that the Tribe's obligation to dismiss its protests and petitions is

9   triggered by the retirement, or abandonment or forfeiture, of 6,500 acres of water rights

10  through acquisition and through the Tribe's petitions and protests.

11          The court cannot agree that enforcing the agreement and requiring dismissal of the

12  Tribe's protests and petitions upon the retirement of 6,500 acres of water rights through a

13  combination of the A.B. 380 program and the Tribe's protests results in an unfair windfall to

14  the dismissed owners of challenged water rights at the expense of the Tribe.  Until 6,500

15  acres of water rights are retired, each owner of a water right that the Tribe has challenged

16  but who did not participate in the A.B. 380 program remains subject to having that water

17  right challenged.

18          Rather, any undue windfall would be in favor of the Tribe if the triggering language is

19  interpreted as the Tribe suggests.  For every acre of water rights acquired through the A.B.

20  380 program, the Tribe has already received the significant benefit of not being required to

21  prosecute its challenge as to that acre of land.[5]  If relieved of its obligation to dismiss upon

22  _____

23          [4]      Pursuant to the statutory language of A.B. 380, final determinations of
       forfeiture or abandonment in any party's challenge (including the Tribe's) for which the
24     party was paid the fair market value of the retired water rights are considered to be water
       rights acquired through the acquisition program.

25          [5]      The Tribe's interpretation would suggest that the windfall to the Tribe would
       increase with every acre of retired water rights, and would disappear only if the A.B. 380
26     program retired 6,500 acres.  In the most extreme case, if the A.B. 380 program had

1  the retirement of 6,500 acres of water rights, the Tribe will receive this benefit as a windfall

2  for which it incurred no obligation.

3       In sum, as 6,500 acres of water rights have not been retired through a combination

4  of the water rights acquisition program and the Tribe's continued prosecution of its

5  petitions, the moving parties' motions to enforce settlement are premature and will be

6  denied as such.  The court invites the moving parties to renew these motions if the Tribe

7  fails to dismiss its remaining petitions and protests once 6,500 acres of water rights have

8  been abandoned or retired through a combination of the A.B. 380 program and final

9  determinations in the Tribe's petitions and protests.  Therefore,

10       THE COURT **ORDERS** that the Motions to Dismiss, and the Application for an Order

11  to Show Cause (## 803, 806, 804, 807 in Orr Ditch; ## 2043, 2044, 2045, 2050 in Alpine)

12  are GRANTED as follows.  The Tribe's petitions are DISMISSED, without prejudice, as to

13  each unserved respondent.  Further, the Tribe's petitions are DISMISSED, without

14  prejudice, as to each person who has purchased lands from a served respondent.

15       THE COURT FURTHER **ORDERS** that the Pyramid Lake Paiute Tribe's Motion to

16  File Surreply (#846 in Orr Ditch, #2177 in Alpine) is DENIED.

17       THE COURT FURTHER **ORDERS** that the Motions to Enforce Settlement

18  (Documents ## 798 and 802 in the Orr Ditch litigation, 3:73-cv-00003-LDG; Documents ##

19  2038, 2042 in the Alpine litigation, 3:73-cv-00183-LDG) are DENIED without prejudice as

20  premature.

21

22

23

24  ───────────────

25  missed its 6,500 acre limit by a single acre, retiring "only" 6,499 acres of water rights, the
Tribe would have received the benefit of the retirement of 6,499 acres of water rights, yet

26  be relieved of its obligation to dismiss its petitions.  The court finds that such an
interpretation of the triggering language is unreasonable.

12

1    THE COURT FURTHER **ORDERS** that the City of Fallon's Motion to Extend Time

2  (#787 in Orr Ditch) is GRANTED.

3    DATED this _____ day of March, 2008.

4    _____

5    Lloyd D. George
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26